UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JONATHAN L. MOORE,<br>    Plaintiff,<br><br>v.<br><br>JAMES WEEDEN, et al.<br>    Defendants. | C.A. No. 09-434M |

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge.

The instant action is the sixth complaint incident to his incarceration that Plaintiff Jonathan L. Moore has filed in this court within the last two years.[1] Because the Court found that two of the pending actions, 09-434 and 09-452, flowed from the same set of facts, the Court consolidated those actions into one case, 09-434. (Text Order, Oct. 12, 2011.) Before the Court for decision are Defendants' Motions to Dismiss Complaint or, in the Alternative Motions for Summary Judgment (ECF No. 67 in 09-434 and ECF No. 60 in 09-452).[2]

I. **FACTS AND BACKGROUND**

Mr. Moore is a prisoner at the Adult Correctional Institution in Cranston, Rhode Island ("ACI"). Mr. Moore brings both of these actions pursuant to 42 U.S.C. § 1983, claiming that the named state employees violated his constitutional rights. In case 09-434, Mr. Moore alleges that a fellow inmate, Larry Smith ("Inmate Smith") attacked him in the dining room on January 14, 2009. (ECF No. 1 in 09-434.) Mr. Moore further alleges that the Defendant correctional officers

---

[1] The six actions and their current statuses are: the instant consolidated cases, 09-434 and 09-452 (pending); 09-543 (dismissed); 10-049 (dismissed and appeal denied); 11-483 (pending); and 11-599 (dismissed). To clearly discuss the motions pending in consolidated cases, the Court will deal separately with Mr. Moore's claims in each of those cases.

[2] Mr. Moore objected at ECF No. 72 in 09-434 and ECF Nos. 63 and 70 in 09-452.

(COs), in retaliation for complaints Mr. Moore filed against them, had bribed Inmate Smith to assault him and later falsified disciplinary reports to indicate that Mr. Moore had assaulted Inmate Smith. *Id.* As discipline for this alleged assault, Mr. Moore received eighty-nine days in segregation. *Id.* Surviving the Court's initial review[3] are Mr. Moore's Eighth Amendment claims against Defendant COs Andre Gregoire, Ray Burdick, and Thomas Pierce[4] for using excessive force against him and/or failing to protect him and Mr. Moore's First and Fourteenth Amendment claims against these three Defendants[5] for retaliating against him for exercising his First Amendment rights.

In case 09-452, Mr. Moore alleges that two COs, Defendant John Douglass and Defendant Elicia Petty, violated his Eighth and Fourteenth Amendment rights. (ECF No. 29 in 09-452.) He cites three incidents in his Amended Complaint in support of his allegations of constitutional violations arising from the January 14, 2009 Inmate Smith assault. *Id.* The incidents are:

1. CO Douglass entered his cell and took a statement purportedly executed by Inmate Smith where he exonerated Mr. Moore from the assault, depriving him of access to the courts;

2. CO Douglass filed a false disciplinary charge that accused him of possessing Inmate Smith's legal papers;

---

[3] Many of the claims in this action, as well as fourteen defendants, have been dismissed after the Court's initial review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2). (*See* Report and Recommendation, 2/3/10, ECF No. 18 in 09-434.)

[4] CO Estrella, against whom Mr. Moore makes the majority of his allegations in his 09-434 Complaint, was never served and therefore is no longer a defendant in this case. (ECF No. 52 in 09-434).

[5] CO Johansen, against whom Mr. Moore makes allegations in this Complaint, was also never served. (ECF No. 51.) There is a suggestion of his death on the record. (ECF No. 60.) CO Johansen is no longer a defendant in this case.

3. COs Douglass and Petty retaliated against Mr. Moore's exercise of his protected activities by searching his cell and taking his bedding for forty-eight hours, causing him to sustain a rash and mattress burn, and relocating him to a less desirable cell for fourteen days.

*Id.* The Court now turns to the applicable standard of review in order to consider Defendants' motions.

## II. STANDARD OF REVIEW

Defendants ask the Court to dismiss Plaintiff's Complaint or, in the alternative to grant summary judgment. When "matters outside the pleadings are presented to and not excluded by the court" on a motion to dismiss, the motion "must be treated as one for summary judgment under Rule 56[.]" Fed. R. Civ. P. 12(d). Defendants have submitted three Affidavits with their motion in 09-434, one from Defendant CO Pierce, one from Defendant CO Gregoire, attaching a copy of the Offender Report he prepared after Mr. Moore allegedly assaulted Inmate Smith, and one from Defendant CO Burdick, all referencing the January 14, 2009 assault. (ECF Nos. 67-1, 67-2, 67-3 in 09-434.) Defendants have submitted two Affidavits with their motion in 09-452, one from Defendant CO Petty and one from Defendant CO Douglass. (ECF Nos. 35-1, 35-2 in 09-452.) Mr. Moore submitted a statement from Inmate Smith with his Complaint and his Motion for Summary Judgment, describing the *quid pro quo* that CO Estrella proposed to Inmate Smith in order to remove Mr. Moore from the module in exchange for extra privileges and protection for Inmate Smith. (ECF No. 1-1 in 09-434 and ECF No. 11-1 in 09-452.) Mr. Moore also submitted another statement from Inmate Smith, referencing the allegation that Defendant CO Douglass stole Inmate Smith's statement from Mr. Moore's cell. (ECF No. 69 in 09-452.) These Affidavits and statements are submitted beyond the pleadings and bear directly on the

facts underlying the operative legal issue, and both parties have had the opportunity to submit, and have submitted, such evidence regarding that issue.

In light of these submissions, the Court will treat these motions as ones seeking dismissal by summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment may be granted only when a court finds "that there is no genuine dispute as to any material fact" and that the undisputed facts give rise to an entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011). A court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *Id.* Moreover, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." *ATC Realty, LLC v. Town of Kingston*, 303 F.3d 91, 94 (1st Cir. 2002) (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993)) (alteration in original) (internal quotation marks omitted). "[T]he nonmovant cannot content himself with unsupported allegations; rather, he must set forth specific facts, in suitable evidentiary form, in order to establish the existence of a genuine issue for trial." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citations omitted).

### III. THE CONSOLIDATED CASES

#### A. CASE NO. 09-434

Mr. Moore makes two claims in the first of the two consolidated cases. He claims that Defendants violated his Eighth Amendment rights by causing him to be assaulted or failing to protect him from being assaulted by Inmate Smith. He further asserts that his First and Fourteenth Amendment rights were violated because Defendants coordinated the assault, and

then falsified the report that accused Mr. Moore of assaulting Inmate Smith in retaliation for the grievances Mr. Moore had filed against them. As evidence of these claims, Mr. Moore submitted a statement purportedly from Inmate Smith himself, who averred that CO Estrella asked him to assist the COs in getting Mr. Moore out of the module in exchange for additional privileges. (ECF No. 1-1.) Inmate Smith also indicated that CO Estrella told him to attack Mr. Moore and that COs Estrella, Burdick, Pierce, and Gregoire would fabricate a disciplinary report stating that Mr. Moore attacked Inmate Smith. *Id.* This scheme was allegedly in response to Mr. Moore's communications with ACI officials about CO misconduct. *Id.*

The Court first turns to Inmate Smith's statement. Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure requires that, to support its assertion that a fact cannot be genuinely disputed, the party must cite to "materials in the record, including . . . affidavits or declarations." Those affidavits or declarations must be sworn to in order for them to be considered valid on a motion for summary judgment. *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l Inc.*, 982 F.2d 686, 689 (1st Cir. 1993). It is apparent from the face of the statement that Inmate Smith did not swear to its veracity, causing the Court to question whether it is reliable evidence admissible to rebut a motion for summary judgment. *See Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 28-29 (1st Cir. 2007) (holding that unsworn statements constituted inadmissible hearsay).

The fact that Inmate Smith did not swear to his statement's truth, however, may not be fatal to its utility. The First Circuit has held that a court may consider unsworn statements under certain circumstances in the context of a Rule 56 motion. "Under federal law, an unsworn statement *signed under penalty of perjury* may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment." *Goldman, Antonetti*, 982 F.2d at 689

(emphasis added) (citing 28 U.S.C. § 1746). That circumstance does not exist in this case though. Inmate Smith's statement was not sworn, notarized, or signed under the penalties of perjury, and therefore the Court will not consider it in support of Mr. Moore's opposition to the Defendants' Motion for Summary Judgment. *See Bennett*, 507 F.3d at 28-29.

Furthermore, the Court questions the statement's authenticity and whether it is entitled to any weight at all. It is clear that Mr. Moore wrote the body of Inmate Smith's statement because the handwriting is the same distinct handwriting contained in all of Mr. Moore's pleadings filed in these consolidated cases.[6] But even if the statement were authentic, it is not reliable because it is hearsay not within any exception. "It is black-letter law that hearsay evidence cannot be considered on summary judgment." *Dávila v. Corporación De Puerto Rico Para La Difusión Pública*, 498 F.3d 9, 17 (1st Cir. 2007) (citing *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir. 1990); *see also* Fed. R. Civ. P. 56(e)). Mr. Moore offers the statement to prove the truth of the matter asserted; that is, that Defendants assaulted and/or failed to protect him from assault and retaliated against him. *See* Fed. R. Evid. 801(c). Mr. Moore had no personal knowledge of any conversations between Inmate Smith and Defendants or CO Estrella, a former defendant. Moreover, the statement also contains double hearsay, indicating that Officer Estrella told Inmate Smith what the other Defendant COs told him, rendering it completely unreliable and inadmissible. (ECF No. 1-1.)

"Because prisoner retaliation claims are 'easily fabricated[ ] and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011) (quoting *Bennett v. Goord*, 343 F.3d

---

[6] This observation, in addition to the fact that the statement is unsworn and not notarized, makes the requirement of signing under the penalties of perjury even more important in this context.

133, 137 (2d Cir. 2003). In fact, there are no allegations, let alone facts in support of such allegations, that these Defendants did in fact fabricate the charges to retaliate against Mr. Moore — the facts submitted in Inmate Smith's statement would support, at best, only an allegation that COs Burdick, Pierce, and Gregoire *would* fabricate charges, not that they actually did. (ECF No. 1-1).[7]

To counter the Inmate Smith statement and in support their motion for summary judgment, Defendants submitted Affidavits from COs Burdick, Pierce, and Gregoire stating that they had no knowledge of any planned attack by Inmate Smith on Mr. Moore or of the alleged fabrication of disciplinary charges. These Affidavits are signed, sworn, and notarized statements that the Court finds to be reliable, admissible, and persuasive. Because there is no competent evidence to establish a genuine dispute as to any material fact to support Mr. Moore's claims of First, Eighth, or Fourteenth Amendment violations by COs Burdick, Pierce, and Gregoire in retaliation for his exercise of his grievance rights, Defendants' Motion for Summary Judgment (ECF No. 67) is GRANTED, and the claims contained in 09-434 are DISMISSED.

### B.   Claims in Case No. 09-452

In the 09-452 case, Mr. Moore claims that COs Douglass and Petty deprived him of access to the courts, retaliated against him by filing false disciplinary reports, and used excessive force during his incarceration. In making these three claims, he cites to five incidents; specifically, he alleges that: a) CO Douglass stole the Inmate Smith affidavit depriving him of access to the courts; b) CO Douglass filed false disciplinary charges against him for being in possession of Inmate Smith's legal papers, for which Mr. Moore was unfairly subjected to a five day disciplinary confinement; c) CO Douglass moved Mr. Moore to an undesirable cell and

---

[7] All remaining allegations in the Complaint are directed at CO Estrella, who is not a defendant in this case; as such, the Court will disregard those allegations. *See supra* note 4.

subjected him to disciplinary confinement for fourteen days there in retaliation for the progression of Mr. Moore's lawsuit; (d) CO Petty took his bedding for forty-eight hours and filed false disciplinary charges against him in retaliation for the grievance Mr. Moore filed against CO Douglass; and e) CO Petty used excessive force by spraying him with pepper spray in retaliation for his filing this lawsuit.

### 1. Deprivation of Access to the Courts

Mr. Moore alleges that on September 4, 2009, CO Douglass entered his cell and took an August 18, 2009 statement that Mr. Moore had obtained from Inmate Smith. Mr. Moore alleges that he intended to use the statement to prove one of his 42 U.S.C. § 1983 actions against ACI officials because the statement demonstrated that the disciplinary charges the Defendant COs lodged were false and retaliatory. Specifically, Mr. Moore asserts that CO Douglass' action was an unconstitutional denial of his right of access to the courts, citing *Bounds v. Smith*, 430 U.S. 817, 821-23 (1977), and *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Not surprisingly, CO Douglass denies Plaintiff's contentions. He further counters that even if the allegations are true, Mr. Moore has failed to allege actual injury resulting from CO Douglass' action, namely that the alleged wrongdoing hindered his efforts to purse a legal action, necessary to properly assert a claim for denial of access to the courts.

Prisoners have a constitutional right of access to the court that "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. To recover on this claim, however, a prisoner must demonstrate that he suffered an actual injury, such as the frustration of a nonfrivolous legal claim, as a result of the inadequacies in accessing legal assistance. *Lewis*, 518 U.S. at 351–52. Allegations of an inability to "litigate

effectively" are not sufficient to establish actual injury. *Id.* at 354.

The Court finds that Mr. Moore's claim fails because he has not shown actual injury. A review of Mr. Moore's Amended Complaint fails to uncover any allegations that CO Douglass' alleged conduct prevented Mr. Moore from gaining access to the courts for the purposes of filing or pursuing litigation.[8] Because he attached it to his 09-434 Complaint, which was mailed on September 14, 2009, it is clear that Mr. Moore had possession of Inmate Smith's statement. (ECF No. 1-1.) Moreover, Mr. Moore has been a prolific litigant in this district and has failed to allege that being deprived of the Inmate Smith statement at some point in his cases denied him the ability to pursue his litigation. Therefore, Defendants' Motions on this ground are GRANTED.

### 2. Retaliation and False Disciplinary Charges

Mr. Moore next alleges that COs Douglass and Petty filed false disciplinary charges and otherwise retaliated against him as a response to his legal actions and grievances. Mr. Moore describes three incidents underlying his claims of retaliation, which he alleges resulted in false charges and unfair disciplinary action. "[T]o survive summary judgment on a retaliation claim, a prisoner must make out a prima facie case by adducing facts sufficient to show that he engaged in protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011) (citations omitted). In this case, Mr. Moore filed and pursued a lawsuit and filed grievances, actions that qualify as a protected activity, and therefore, he clearly meets the first element of his prima facie case for retaliation against COs Douglass and Petty. The Court turns to each of

---

[8] The Court is construing Mr. Moore's Complaint with "particular generosity" as is required in the case of a *pro se* complaint alleging a civil rights violation. *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003).

Mr. Moore's claims and discusses the second and third elements in turn.

### a. Possession of Inmate Legal Materials

Mr. Moore alleges that CO Douglass filed a false disciplinary charge against him for allegedly having possession of Inmate Smith's legal materials for which Mr. Moore was unfairly subjected to a five-day disciplinary confinement. Mr. Moore claims that this false charge "inhibited [his] exercise of, and deterred [him] from proceeding with, [his] constitutionally protected activities," relying on *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). (ECF No. 29 at 4 in 09-452.) Mr. Moore alleges that he was "unduly punished with a 5-day term" of disciplinary confinement. *Id.* Defendant CO Douglass asserts in his affidavit that he filed this charge because Mr. Moore was in possession of another inmate's disciplinary report, conduct that violates ACI rules. (Douglass Aff. ¶¶ 3-4, ECF No. 35-2 in 09-452.)

The facts do not support Mr. Moore's assertions. The Court has already found that Mr. Moore's exercise of his constitutionally protected activity in bringing and pursuing a lawsuit against ACI officials and COs was not inhibited by CO Douglass' actions vis-à-vis the Inmate Smith statement. Moreover, the evidence shows that the alleged adverse event, the five-day discipline, was imposed only after Mr. Moore was found guilty of having possession of another inmate's disciplinary records. (ECF No. 60-1 in 09-452.) Mr. Moore has completely failed to adduce or allege any evidence that such discipline was unearned, let alone unconstitutional. Because there was no adverse action against him, his claim must fail.

### b. Cell Transfer

Mr. Moore contends that CO Douglass moved him to an undesirable cell on March 9, 2010, and subjected him to this disciplinary confinement for fourteen days until March 23, 2010, in retaliation for the Court's March 9, 2010 order in this lawsuit. Defendant CO Douglass

counters that he had no knowledge of the Court's March 9, 2010 order, and therefore his actions could not have been in response to the action taken in Plaintiff's lawsuit. Additionally, Defendants argue that a transfer to a less desirable cell does not violate Mr. Moore's constitutional rights.

As previously noted, Mr. Moore clearly meets the first element of his prima facie retaliation case against CO Douglass because he filed and pursued a lawsuit. Mr. Moore's claim relative to the second element, however, requires deeper scrutiny. "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). The Court finds that Mr. Moore has failed to submit any competent evidence that CO Douglass' action in moving him to a cell in a less desirable location constitutes an adverse action. The fact that the new cell abutted a concrete wall and provided less access to human contact does not rise to the level of punishment, however unpleasant its location may have been for Mr. Moore. Moreover, the duration of the time he spent in this less desirable cell was not so long as to constitute a rights violation, and Mr. Moore does not articulate any facts detailing the harm he suffered as a result of this fourteen-day relocation. In light of these deficiencies, Mr. Moore has failed to demonstrate that he suffered an adverse action sufficient to prove the second element of his prima facie case.

### c. Torn Bedding

In his next retaliation claim, Mr. Moore alleges that on September 15, 2009, CO Petty searched his cell, took his bedding, and filed false disciplinary charges against him in retaliation for a grievance Mr. Moore filed against CO Douglass on September 10, 2009. He claims that because he was without bedding for forty-eight hours, he developed rashes and mattress burns on his body. Defendant CO Petty responds that Mr. Moore was in fact guilty of the disciplinary

charges she filed and as such, the charges were merited and could not be retaliatory.

As the record is clear that Mr. Moore did engage in protected activity by filing a grievance against CO Douglass, he meets the first element of his retaliation claim here. Moving on to whether the disciplinary charges were adverse actions, the Court must review the nature of the charges CO Petty filed against Mr. Moore. From the evidence in the record, it appears that CO Petty filed two charges against Plaintiff arising out of her search of his cell. (ECF No. 60-1 in 09-452.) The first charge was for possessing two torn bed sheets (No. 000087661), and the second was for possessing a torn mattress cover (No. 000087662). A Hearing Officer dismissed the first disciplinary charge and combined it with the second as the charges were identical. An inspection of his bedding revealed that his mattress cover was torn.

The Court finds that the evidence in the record does not support Plaintiff's contention that CO Petty's actions in filing these disciplinary charges was retaliatory in response to his exercise of his right to file a grievance. Mr. Moore's disciplinary records demonstrate that Mr. Moore pled guilty of possessing the torn mattress cover (No. 000087662). The fact that there was an independent reason for the disciplinary charge and that a Hearing Officer investigated the incident and determined that Mr. Moore was guilty of the charged infraction demonstrates that no adverse action, as required to establish a prima facie case of retaliation, exists on this claim. Therefore, Defendants' Motions for Summary Judgment on this claim are GRANTED.

### 3. Excessive Force

Mr. Moore's final claim in this case is that CO Petty used excessive force in using pepper spray against him on November 20, 2009, in response to his knocking on his cell door (No. 000091874). He alleges that this action was retaliatory because he filed a lawsuit against COs Douglass and Petty in September of 2009. CO Petty disputes that she sprayed Mr. Moore, but

indicated in her affidavit that Lt. Galligan did use the pepper spray on Mr. Moore to restore order and to calm and protect him from potentially harming himself. (Petty Aff. ¶ 7, ECF No. 35-1 in 09-452.)

To state a claim for the use of excessive force, a prisoner must show that that he suffered through "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citations omitted) (internal quotation marks omitted). In considering allegations of an Eighth Amendment violation, the Court must consider "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citations omitted). Therefore, the Court must consider whether the use of force was a necessary infliction of pain and whether the COs used the pepper spray against Mr. Moore in good faith or maliciously.

The Court finds that because Mr. Moore pled guilty to the charged infraction of banging on or kicking a cell door (No. 000091874), he cannot claim that he was undeserving of *any* disciplinary action to stop him from continuing his actions. At the time of the hearing, he accepted responsibility for his conduct and the punishment of disciplinary confinement and loss of good time. Moreover, Mr. Moore fails to allege any evidence that the use of pepper spray was not appropriate or commensurate with the admitted infraction or that it was used specifically to cause him harm.

Nor has Plaintiff put forth any proof that this use of force was retaliatory. It is true that "direct proof of a retaliatory motive is not essential to make out a prima facie case." *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011) (citations omitted). "In some instances, circumstantial evidence (say, temporal proximity between a protected act and an adverse action, falsification of institutional records, or deviation from standard operating procedures) may suffice." *Id.*

(citations omitted). Plaintiff argues that the timing of his September 2009 lawsuit and CO Petty's discipline in November of 2009 is proof of retaliation. However, as the Court found, the fact that there was an independent reason for the disciplinary charge and that Mr. Moore was guilty of the charged infraction demonstrates that no adverse action, as required to establish a prima facie case of retaliation, exists. Therefore, Defendants' Motions for Summary Judgment on this claim are GRANTED.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motions to Dismiss or In the Alternative Motions for Summary Judgment are GRANTED in this consolidated action.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
United States District Judge

March 6, 2012